**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | |
|---|---|
| **GEORGETTE A.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. CBD-19-1632 |
| ) | |
| **ANDREW SAUL,** ) | |
| ) | |
| **Commissioner,** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

Georgette A. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 11, Plaintiff's Alternative Motion for Remand ("Plaintiff's Alternative Motion"), ECF No. 11, and Defendant's Motion for Summary Judgment ("Defendant's Motion"), ECF No. 12. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Motion. A separate order will issue.

**I.      Procedural Background**

On December 31, 2015, Plaintiff filed for DIB under Title II of the SSA, alleging disability beginning June 5, 2014.  R. 14.  Plaintiff alleged disability due to dumping syndrome, reactive hypoglycemia, low blood sugar, headaches, fatigue, memory problems (forgetfulness), and past stomach surgery to remove a tumor.  R. 84, 87, 96.  Plaintiff's claims were initially denied on August 15, 2016, and upon reconsideration on November 23, 2016.  R. 14.  An administrative hearing was held on December 6, 2017.  R. 14.  On May 3, 2018, the ALJ denied Plaintiff's claim for DIB.  R. 25.  Plaintiff sought review by the Appeals Council, which concluded on April 4, 2019, that there was no basis for granting the request for review.  R. 1.  Plaintiff subsequently filed an appeal with this Court.  ECF No. 1.

**II.     Standard of Review**

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2019).  The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law.  *Id.*  ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.");  *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).  "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence."  *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002).  Substantial evidence is "more than a mere scintilla."  *Russell*, 440 F. App'x at 164.  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.

(citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971));  *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted);  *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'").  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted).  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (2012).  The Code of Federal Regulations outlines a five-step process (Five–Step Analysis) that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

20 C.F.R. § 404.1520(a)(4) (2012). Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 404.1545(b)–(c) (2012). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. § 404.1545(a) (2012). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence

(e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

### III. Analysis

The ALJ evaluated Plaintiff's claim using the Five–Step Analysis. R. 16–25. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 5, 2014. R. 16. At step two, under 20 C.F.R. § 404.1520(c) the ALJ determined that Plaintiff had the following severe impairments: dumping syndrome and hypoglycemia. *Id.* The ALJ stated that the listed impairments were severe because they "significantly limit the [Plaintiff]'s ability to perform basic work activities." *Id.* At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526)." R. 19. Before turning to step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> [Plaintiff] is able to lift up to 20 pounds at a time, frequently lift or carry objects weighing up to 10 pounds, and stand, walk and sit for approximately six hours each in an eight-hour workday. [Plaintiff] can occasionally stoop, climb ramps and stairs, balance, kneel, crawl, crouch, and climb ladders, ropes and scaffolds.

R. 19–20   At step four, the ALJ determined that Plaintiff can perform her past relevant work as a Purchasing Supervisor and Purchasing Agent, as it is actually performed.  R. 25.  The ALJ noted that Plaintiff's past relevant work was a composite job, and therefore, "it cannot be evaluated as work generally performed in the national economy."  *Id.*  The ALJ also noted that "[t]he aforementioned work is past relevant work because it was performed at substantial gainful activity level within fifteen years prior to the date of adjudication, and [Plaintiff] worked at the job long enough to learn how to perform it."  *Id.*  The ALJ found that Plaintiff has not been under a disability, as defined in the SSA.  R. 25.

On appeal, Plaintiff argues that the Court should reverse the ALJ's decision, or in the alternative remand this matter for a new administrative hearing, alleging that "there is neither a genuine dispute between the parties as to any material fact, nor any competent evidence to support the Defendant's decision."  Pl.'s Mem. in Supp. of Pl.'s Mot. 1, ECF No. 11–1.  Plaintiff asserts that the ALJ erroneously assessed Plaintiff's RFC because the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence."  *Id.* at 5.  Specifically, Plaintiff avers that the ALJ erred because:

> "[H]e did not explain the basis for his finding that the Plaintiff could lift up to 20 pounds at a time, frequently lift or carry 10 pounds, stand, walk, and sit for approximately six hours each in an eight-hour workday, and could occasionally stoop, climb ramps and stairs, balance, kneel, crawl, crouch, and climb ladders, ropes, and scaffolds."

*Id.*  Plaintiff claims that "[t]here is no reference in the residual functional capacity assessment to any limitation actually associated with the Plaintiff's dumping syndrome or hypoglycemia."  *Id.* at 6.  Plaintiff argues that the ALJ ignored pertinent evidence.  *Id.*  Specifically, Plaintiff contends that the ALJ improperly evaluated the medical opinions of her treating physicians, Dr.

Hakim and Dr. Yeatmans, because although both physicians opined that her symptoms would interfere with her attention and concentration, the ALJ "failed to include any limitation upon the Plaintiff's attention and concentration in his residual functional capacity assessment." *Id.* Plaintiff also asserts that the ALJ "accorded significant weight to the opinions of the [s]tate [a]gency physicians who evaluated the Plaintiff's claims on behalf of the [Defendant]." *Id.* at 6–7. However, the ALJ failed to "address the [s]tate [a]gency physicians' opinions regarding the credibility and consistency of the Plaintiff's statements regarding her symptoms," and the ALJ "failed to properly evaluate the Plaintiff's mental impairment." *Id.* at 7, 9. Defendant avers that the ALJ's decision is supported by substantial evidence. Def.'s Mem. in Supp. of Def.'s Mot.4, ECF No. 12–1. Defendant argues that "the ALJ cited to specific evidence in his narrative discussion to support his conclusions, and properly weighed the medical opinions in the records (internal citations omitted)." *Id.* Defendant contends that "the ALJ account[ed] for all of Plaintiff's alleged symptoms; he weighed them against the medical and non-medical evidence in the record, and reasonably concluded that [Plaintiff] would be capable of performing a range of light work, eight hours per day, five days per week (internal citations omitted). *Id.* at 6. Defendant alleges that Plaintiff is "asking this Court to re-weigh the evidence, which is impermissible (internal citations omitted)." *Id.* at 6. For the reasons set forth below, the Court **DENIES** Plaintiff's Motion in its entirety and **AFFIRMS** the ALJ's decision.

**A. The ALJ's Residual Functional Capacity is Supported by Substantial Evidence.**

Generally, the Court will affirm the Social Security Administration's disability determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018) (citing *Mascio*, 780 F.3d at 634). But when performing an RFC assessment, the ALJ must provide a

narrative discussion with the RFC assessment describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7 (S.S.A). "In other words, the ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate logical bridge from [that] evidence to his conclusion.'" *Woods*, 888 F.3d at 694 (emphasis in original).

A proper RFC analysis has three components: (1) evidence; (2) logical explanation; and (3) conclusion. *Thomas*, 916 F.3d at 311. The ALJ's logical explanation is just as important as the other two. *Id*. Without a proper narrative discussion from the ALJ, it is impossible for the Court to determine whether the decision was based on substantial evidence. *Geblaoui v. Berryhill*, No. CBD-17-1229, 2018 WL 3049223, at *3 (D. Md. June 20, 2018) (citing *Jones v. Astrue*, No. SKG-09-1683, 2011 WL 5833638, at *14 (D. Md. Nov. 18, 2011)). "The ALJ has the obligation to consider *all* relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (emphasis added). The ALJ must also include "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

As mentioned above, at step two of the Five–Step Analysis, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4) (2012). "Step two is merely a threshold determination meant to screen out weak claims. *Peggy W. v. Saul,* No. CV TMD 18-1929, 2019 WL 3766505, at *5 (D. Md. Aug. 9, 2019) (citing *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). It is not meant to identify the impairments that should be taken into account when determining the

RFC." *Id.* "At step four, on the other hand, the [Commissioner] must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Peggy W.,* 2019 WL 3766505, at *5 (citing *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012)). "It is possible, therefore, for [the Commissioner] to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.* Thus, "an ALJ is not required to include a corresponding limitation for each severe impairment." *Copes v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-3487, 2013 WL 1809231, at *1 (D. Md. Apr. 26, 2013).

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *Grimes v. Berryhill*, No. CV TMD 17-1794, 2018 WL 4206936, at *4 (D. Md. Sept. 4, 2018) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). "In other words, the issue before the Court is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Richardson*, 402 U.S. at 401.

As shown above, at step two of the Five–Step Analysis, the ALJ determined that Plaintiff's dumping syndrome and hypoglycemia, were severe impairments. R.16. At step four, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) except with the following limitations:

> [Plaintiff] is able to lift up to 20 pounds at a time, frequently lift or carry objects weighing up to 10 pounds, and stand, walk and sit for approximately six hours each in an eight-hour workday. [Plaintiff] can occasionally stop, climb ramps and stairs, balance, kneel, crawl, crouch, and climb ladders, ropes and scaffolds.

R. 19–20. Plaintiff contends that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." Pl.'s Mem. in Supp. of Pl.'s Mot. 5. This Court disagrees.

In the narrative discussion pertaining to the RFC analysis, the ALJ thoroughly discussed Plaintiff's dumping syndrome and hypoglycemia. R. 19–24. The ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, including opinion evidence. R. 20. The ALJ acknowledged Plaintiff's severe impairments by noting:

> The medical evidence reflects that [Plaintiff] has been diagnosed with dumping syndrome and hypoglycemia. The record reflects that in 1991, [Plaintiff] underwent a partial gastrectomy and developed dumping syndrome due to gastric antral [sic] cancer. [Plaintiff] then developed related hypoglycemia in 2007. The record documents ongoing monitoring for this condition. Records from prior to the alleged onset date document that these conditions were associated with weight loss and gastric symptoms occurring after [Plaintiff] ate.

(internal citations omitted). R. 20–21. The ALJ noted that Plaintiff reported that "within 30 minutes of eating, she has hot flashes, head pressure, headaches and palpitations and that her blood glucose starts dropping within one to two hours." R. 21. The ALJ also acknowledged that "after she eats, she gets a host of symptoms that include red hands, headaches, shaking and general malaise." *Id.* The ALJ then considered Plaintiff's oral testimony and noted:

> [Plaintiff] testified to having dumping syndrome and hypoglycemia, which causes her to be symptomatic after she eats. [Plaintiff] testified that after eating, she feels fatigued and drowsy and that she has difficulty concentrating. [Plaintiff] also reported having memory problems. [Plaintiff] testified that these symptoms originate from a surgery that she had in 1991 but that the symptoms began in 2007. [Plaintiff] testified that she did work with these symptoms and that she worked to get herself into a position where she could retire. [Plaintiff] testified that when working, she

>would have breakfast at her desk and wait for the symptoms to pass. [Plaintiff] reported that the main way she treats this condition is by having small frequent meals that are high in protein. [Plaintiff] also testified that she needs to nap on a daily basis.

(internal citations omitted). R. 20.

After considering Plaintiff's alleged symptoms and her oral testimony, the ALJ pointed to several treatment records that question the severity of Plaintiff's symptoms and supports his conclusion that her impairments are well managed. For instance, the ALJ referenced that "Dr. Joseph noted that [Plaintiff] is controlling her hypoglycemia with dietary modification and that she is not in need of pharmacotherapy." R. 21. Dr. Hakim noted that "[Plaintiff] needs to continue eating small, frequent meals with protein and that if she eats this way, her symptoms should be well–controlled (internal citations omitted)." *Id.* In May of 2015, Plaintiff attended a follow-up visit at Frederick Oncology Hematology Associates, and her records showed that Plaintiff was "in overall excellent health . . ." and that "her weight had been stable for the past two years." R. 21– 22. At an August 2017, it was noted that "Plaintiff feels well and . . . the clinical exam was normal." R. 22. The ALJ reviewed Plaintiff's primary care records from 2014 to 2017 and noted that there were no significant abnormalities. R. 22. The ALJ considered Plaintiff's reported activities and discussed that:

>[Plaintiff] reported that she is able to attend to her own finances, volunteer at her church twice a month, read, watch television and go shopping. Further, she testified that her symptoms only occur after she eats.

R. 22. The ALJ also remarked that "[Plaintiff] reported having no problems with her blood glucose during lunch and intermittent symptoms of hypoglycemia overnight." R. 21. Further, "[Plaintiff] reported having symptoms relating to dumping syndrome for the past three years that have consisted of minimal bloating and no diarrhea." *Id.* The ALJ concluded that "Plaintiff's medically determinable impairments could reasonably be expected to

11

cause the alleged symptoms; however, [Plaintiff's] statements concerning the severity, intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ". R. 20. After extensively reviewing the record, the ALJ stated:

> While the evidence does not fully support the extent of [Plaintiff's] allegations, I have included significant limitations in the residual functional capacity in accommodation of the medically supplied restrictions of record and [Plaintiff's] allegations, to the extent consistent with the medical evidence. In accommodation of both of her physical impairments, I have limited [Plaintiff] to light work where she can occasionally stoop, climb ramps and stairs, balance, kneel, crawl, crouch, and climb ladders, ropes and scaffolds. This accommodates all medically supported restrictions of record.

R. 24. The Court finds that the ALJ's RFC analysis is sufficient and supported by substantial evidence.

In the ALJ's five–page written narrative on the RFC, the ALJ discussed Plaintiff's impairments, symptoms, medical and non–medical evidence, treatment records, Plaintiff's oral testimony, and opinion testimony. R. 19–24. The ALJ then assessed Plaintiff's credibility, assigned weight to the opinion evidence, and evaluated Plaintiff's activities of daily living. *Id.* In support of his RFC, the ALJ cited substantial evidence that undermined the severity of Plaintiff's symptoms. The record and the ALJ's analysis are replete with examples that suggest Plaintiff could work for several years with her symptoms; her overall condition improved; her conditions were under control without medication or a specific treatment regimen; and Plaintiff could manage her symptoms by the way she ate. *Id.* The ALJ also points out other evidence to support his RFC analysis. The ALJ references an appointment in January 2017, in which her treating physician, Dr. Yeatman, noted that "[Plaintiff] was no longer diagnosed with hypoglycemia." R. 21. Plaintiff testified that "these symptoms began prior to the alleged onset date and that she was able to work with these symptoms as she carefully

12

managed how she ate." R. 23–24.  The ALJ also noted that "the medical records do not document any significant change in her functioning around the time of [the] alleged onset date." R. 24.  The ALJ also cites evidence that undermined the severity of Plaintiff's impairments.  For example, a review of Plaintiff's endocrinologist's records revealed that "Plaintiff did complain of symptoms but that no underlying cause was found and that no significant treatment was provided." *Id.*  Plaintiff's endocrinologist noted in June 2016, that "he was unable to correlate [Plaintiff's] reported sleepiness with her glucose numbers, since her numbers were excellent with no low glucose findings." *Id.*  Further, in May 2017, Dr. Hakim noted that "[Plaintiff] should stop checking her glucose unless she feels symptomatic since her numbers always run low." *Id.*

Based on the ALJ's thorough analysis and explanation of the RFC, the Court finds no reason to disturb the ALJ's finding. The ALJ's narrative discussion of his RFC findings establishes that there was substantial evidence for the physical limitations that he assigned to the RFC.  Further, "there is no requirement that every severe impairment correlate with a particular restriction in the RFC assessment." *Dunlap v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-14-3267, 2015 WL 5781519, at *2 (D. Md. Sept. 29, 2015) (citing *Carrier v. Astrue,* No. SAG–10–3264, 2013 WL 136423, at *1 (D. Md. Jan. 9, 2013).  The ALJ's role at step four of the Five–Step Analysis, is to look at the evidence, and "determine more precisely how, if at all, [Plaintiff's] impairments limit her ability to work." *Peggy W.,* 2019 WL 3766505, at *5 (citing *Taylor*, 2012 WL 294532, at *8).  The ALJ here did just that.  As mentioned above, it is not this Court's job to engage in re-weighing of the evidence. *Hancock*, 667 F.3d at 472.  Rather, the Court's role is to determine whether substantial evidence, supports the ALJ's decision and whether correct legal standards were applied. *Torres v. Comm'r, Soc. Sec. Admin.*, No. SAG-15-

3294, 2016 WL 5108022, at *3 (D. Md. Sept. 20, 2016) (citing *Richardson*, 402 U.S. at 390, 404). The Court finds that the ALJ supported his RFC assessment with substantial evidence from the medical records, oral testimony, and opinion evidence. Therefore, remand is not warranted on this issue.

### B. The ALJ Did Not Erroneously Evaluate The Opinions Of Plaintiff's Treating Physicians Or State Agency Medical Consultants.

Plaintiff contends that the ALJ "failed to include any limitation upon the Plaintiff's attention and concentration in his residual functional capacity," despite Plaintiff's treating physicians, Dr. Hakim and Dr. Yeatman, noting that Plaintiff's symptoms would interfere with her attention and concentration. Pl.'s Mem. in Supp. of Pl.'s Mot. 6. Plaintiff also argues that "the ALJ accorded 'significant weight' to the opinions of the[s]tate [a]gency physicians who evaluated the Plaintiff's claim on behalf of the Commissioner (internal citations omitted)," but "failed to address the [s]tate [a]gency physicians' opinions regarding the credibility and consistency of the Plaintiff's statements regarding her symptoms." *Id.* at 6–7. Plaintiff's argument lacks merit.

Generally, the opinions of treating physicians are given greater weight than the opinions of other examining physicians because they are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 404.1527(c)(2) (2017). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record[,]" the ALJ must give it controlling weight. *Lewis*, 858 F.3d at 867 (citing 20 C.F.R. § 404.1527(c)(2)). "However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with

14

other substantial evidence it should be afforded significantly less weight." *Skinner v. Berryhill*, No. ADC-16-3957, 2017 WL 5624950, at *9 (D. Md. Nov. 11, 2017) (citing *Lewis*, 858 F.3d at 867).  An ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability because that issue remains for the Commissioner alone.  20 C.F.R. § 414.1527(d)(1) (2017).

"Generally, courts should not disturb an ALJ's decision as to the weight afforded to a medical opinion absent some indication that the ALJ 'dredged up specious inconsistencies.'" *Thompson v. Berryhill*, No. 3:16cv815, 2018 WL 715597, at *4 (D. Md. Jan. 18, 2018) (citing *Dunn v. Colvin*, 607 Fed. App'x. 264, 267 (4th Cir. 2015)).  If a treating source's opinion is not given controlling weight, the ALJ must consider the following factors in deciding the appropriate weight to give the treating physician's opinion:

> (1) the length and frequency of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is a specialist giving an opinion about his area of specialty; and (6) any other factors which tend to support or contradict the opinion.

*Skinner*, 2017 WL 5624950, at *9 (citing 20 § C.F.R. 404.1527(c)(1)–(6)).  "An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the reasoning behind the weight accorded to the opinion." *Id.*  (citing *Carter v. Astrue*, No. CBD-10-1882, 2011 WL 3273060, at *6 (D. Md. July 27, 2011)).  "The regulations require only that 'good reasons' be provided for the weight given to a treating physician's opinion." *Id.*  (citing 20 C.F.R. § 404.527(c)(2)).

> An ALJ may, however, credit the opinion of a non-treating, non-examining source where that opinion has sufficient indicia of 'supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency

> between the opinion and the record as a whole; and specialization
> in the subject matter of the opinion.'

*Woods*, 888 F.3d at 695 (quoting *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 268 (4th Cir. 2017)).

"There is no requirement that because the ALJ has assigned an opinion 'great weight,' [he] must also adopt the opinion in its entirety or adopt all of its RFC limitations. *Gray v. Berryhill*, No. CV CBD-17-1410, 2018 WL 3388332, at *3 (D. Md. July 12, 2018) (citing *Martin v. Comm'r*, No. SAG-15-335, 2015 WL 7295593, at *4 (D. Md. Nov. 18, 2015)); *see also Elsey v. Comm'r, SSA*, No. SAG-14-2457, 2015 WL 2258540, at *3 (D. Md. May 12, 2015) ("Great weight, however, is not controlling weight, and the ALJ is not required to adopt every limitation set forth in a medical opinion, simply because she assigns it great weight."). Furthermore, even though "nothing requires the ALJ to provide reasons for failing to adopt limitations concluded by the state agency consultants," the ALJ has not ignored their opinions in assessing Plaintiff's RFC, as Plaintiff alleges. *Campbell v. Colvin*, No. TMD 13-1894, 2014 WL 7357717, at *8 (D. Md. Dec. 22, 2014) (citing *Nicolls v. Astrue*, 874 F. Supp. 2d 785, 802 (N.D. Iowa 2012); Pl.'s Mem. in Supp. of Pl.'s Mot. 7.

Here, the ALJ thoroughly explains why he accorded Plaintiff's treating physicians little weight. R. 22–24. The ALJ's analysis of Dr. Yeatman's 2017 assessment of Plaintiff is as follows:

> He documented that [Plaintiff] has chronic dumping syndrome and that [Plaintiff] must eat small frequent meals with high protein. Dr. Yeatman opined that [Plaintiff]'s condition would constantly interfere with her attention and concentration and that she is incapable of even low stress work because her physical symptoms are debilitating. When solicited to provide his opinion regarding [Plainitff]'s ability to sit, stand, walk, lift and carry, Dr. Yeatman noted that it was not applicable because [Plaintiff] could not do anything.

16

(internal citations omitted). R. 22. The ALJ then articulates why he accorded little weight to Dr. Yeatman by stating:

> While I acknowledge that Dr. Yeatman had a treating relationship with [Plaintiff], I accord his opinion little weight because I do not find that his treating records fully support his assessment. A review of his records documents that there were often large gaps between appointments. Notably, after being seen in October 2014, the next documented appointment was not until January 2016. Moreover, physical examinations did not document any abnormal findings and Dr. Yeatman did not advise or prescribe any treatment aside from dietary changes. Additionally, as of January 2017, Dr. Yeatman noted that [Plainitff] no longer had a diagnosis of hypoglycemia. Further, [Plaintiff]'s own reported activities demonstrate that she is not as limited as Dr. Yeatman opined.

*Id.* The ALJ addressed Dr. Yeatman's opinion evidence by acknowledging that Dr. Yeatman had a treating relationship with Plaintiff. R. 22. The ALJ explains that he "accord[ed] his opinion little weight because [he] d[id] not find that his treating records fully support his assessment." *Id.* Contrary to what Plaintiff alleges, the ALJ considered Dr. Yeatman's opinion that addressed Plaintiff's attention and concentration, and his opinion of her impairments. *Id.* However, the ALJ documented conflicting evidence such as there were huge gaps between appointments; there was no specific treatment or medication prescribed -- besides dietary changes; and after a review of the record, the ALJ found that Plaintiff was not as limited as Dr. Yeatman opined.

The ALJ also explained why he accorded Dr. Hakim only "some weight." R. 23. The ALJ discussed a November 2017 assessment from Dr. Hakim that documented that Plaintiff has hypoglycemia and pre-diabetes. *Id.* The ALJ noted that Dr. Hakim "opined that [Plaintiff's] symptoms would occasionally interfere with her attention and concentration (internal citations omitted)." *Id.* In according Dr. Hakim's some weight, the ALJ articulated that:

> In according his opinion some weight, I note that Dr. Hakim has a relevant specialty and a treating relationship with [Plaintiff]. His finding that [Plaintiff]'s symptoms would occasionally interfere with her attention and concentration is consistent with the records, which indicate that [Plaintiff] experiences transitory symptoms that may be

17

> associated with low blood sugar levels and that symptoms only occur after eating. However, I do note that in June 2016, Dr. Hakim noted that [Plaintiff]'s glucose levels were excellent and in May 2017, he noted that [Plaintiff] should stop checking her glucose levels unless she feels symptomatic and that if she continues with her diet, her symptoms should be well-controlled. Based on the above, I do not find that his assessment supports a finding of the presence of a limitation that would significantly limit [Plaintiff]s's functional abilities such that it would impact the residual functional capacity.

*Id.* The ALJ considered Dr. Hakim's opinion of Plaintiff's impairments; but the ALJ found discrepancies in his opinion that casts doubt on Plaintiff's position regarding the severity of her alleged symptoms. The ALJ also noted that Dr. Hakim's records suggest that "if Plaintiff continues with her diet, her symptoms should be well-controlled." R. 23.

This Court finds no error in the ALJ's analysis. The ALJ considered Plaintiff's attention and concentration symptoms from both treating physicians, and thoroughly explained why he accorded the weight he did to Plaintiff's treating physicians.

Plaintiff also contends that "the ALJ failed to address the [s]tate [a]gency [p]hysicians' opinions regarding the credibility and consistency of the Plaintiff's statements regarding her symptoms." R. 7. This Court disagrees. Both Dr. Serpick and Totoonchie considered Plaintiff's limitations including her dumping syndrome, hypoglycemia, weight loss, fatigue, headaches, daytime sleepiness, and the fact that she must eat every two to three hours. R. 90–91; 106–107. After considering Plaintiff's symptoms, Dr. Serpick and Totoonchie opined that Plaintiff could engage in light work. *Id.* Dr. Serpick found that Plaintiff had no postural limitations, while Dr. Totoonchie, concluded that Plaintiff had occasional postural limitations. *Id.* The ALJ gave Plaintiff the benefit of the doubt by administering an RFC that had occasional postural limitations. The ALJ essentially drafted his RFC by adopting the state agency physicians' opinions regarding Plaintiff's limitations, including considering Plaintiff's statements concerning her symptoms. Thus, Plaintiff claiming that the ALJ failed to address the state agency

physicians' opinions, is baseless. The medical evidence of record that the ALJ explained above also supports the state agency physicians' opinions. *See supra* Section A.

This Court finds that the ALJ did not err when evaluating the medical opinions of Plaintiff's treating physicians or the state agency consultants to formulate his RFC. Thus, the ALJ used substantial evidence in his RFC narrative discussion, to support his RFC assessment. Therefore, remand is not warranted.

## IV. Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, and **GRANTS** Defendant's Motion.

March 31, 2021　　　　　　　　　　　　　　　　　　　　/s/

　　　　　　　　　　　　　　　　　　　　　　　　　　Charles B. Day
　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

CBD/pjkm